**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**EVELYN JUSTINIANO,**

                **Plaintiff,**

-vs-                                       **Case No. 6:11-cv-1576-Orl-GJK**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                **Defendant.**

_____

## MEMORANDUM OF DECISION

Evelyn Justiniano (the "Claimant") appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits. Doc. No. 1. Claimant maintains that the final decision of the Commissioner should be reversed and remanded because the Administrative Law Judge (the "ALJ") erred by, among other reasons, relying exclusively on the medical-vocational grids at step-five of the sequential evaluation process. Doc. No. 25 at 13-17.[1] For the reasons set forth below, the final decision is **REVERSED and REMANDED** for further proceedings.

## I.    BACKGROUND.

Claimant was born on February 9, 1967, and has completed some college courses. R. 51,

---

[1] Claimant also argues that the ALJ erred by failing to: cite to specific occupations that Claimant can perform; adopt the limitations offered by Dr. Alvan Barber, who opined that Claimant cannot walk long distances and requires the use of a cane, despite having given Dr. Barber's opinion "greater weight"; state the weight given to the opinion of Dr. Allen Rubin; demonstrate good cause to reject the opinion of Dr. Maged Samaan; include all of Claimant's limitations in the hypothetical question to the vocational expert (the "VE"); properly consider Claimant's obesity and sleep apnea; and to articulate adequate reasons, supported by substantial evidence, for finding Claimant's subjective statements not credible. Doc. No. 25 at 13-25.

163, 193.  On April 8, 2009, Claimant filed an application for supplemental security income.  R.

163.  Claimant alleges disability due to: post-traumatic brain injury; fibromyalgia;

costochondritis; arthritis; blood clots; diabetes; vascular disease; sleep apnea; depression; and

bipolar disorder.  R. 108.  Claimant's application was denied initially and upon reconsideration.

R. 105-111.

On June 10, 2010, a hearing was held before ALJ Brendan Flanagan.  R. 33-102.

Claimant and VE Randolph Salmons were the only persons to testify.  R. 33-102.  On July 26,

2010, the ALJ issued a decision finding Claimant not disabled.  R. 19-27.  At step-two, the ALJ

found that the Claimant suffers from the following severe impairments: fibromyalgia; diabetes;

status post deep vein thrombosis; status post mild traumatic brain injury; peripheral artery

disease; hemochromatosis; obesity; and depression.  R. 21.

The ALJ determined that Claimant retains the following residual functional capacity

("RFC"):

> [L]ight work: during a normal 8-hour work day, she can lift/carry
> 20 pounds occasionally and 10 pounds frequently; she can sit for
> up to 6 hours and stand/walk for up to six hours; she can frequently
> climb stairs and ramps, but not ropes, ladders or scaffolds; she can
> frequently balance, stoop, kneel, crouch or crawl; she can perform
> push/pull functions with her extremities; she should avoid
> hazardous work; she is able to concentrate and persist in segments
> of 2 hours duration; she is able to understand, remember and carry
> out simple, routine, repetitive tasks, and is unable to meet fast
> paced, high production demands.

R. 22.  Thus, the ALJ found that, among other limitations, Claimant is limited to simple, routine,

and repetitive tasks.  R. 22.  Based upon the ALJ's RFC and testimony from the VE regarding

Claimant's past-relevant work, the ALJ determined at step-four that Claimant is not capable of

returning to her past-relevant work.  R. 26.

At step-five, the ALJ did not rely upon testimony of the VE, but instead relied solely upon the medical vocational grids as a framework for decision making.  R. 26-27.  The ALJ stated:

> In determining whether a successful adjustment to other work can be made, the [ALJ] must consider the claimant's [RFC], age, education, and work experience in conjunction with the Medical-Vocational Guidelines , 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending on the claimant's specific vocational profile (SSR 83-11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the medical-vocational rules are used as a framework for decision making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or non-exertional limitations (SSRs 83-12 and 83-14).  If the claimant has solely non-exertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision making (SSR 85-15).
>
> If the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21.  However, the additional limitations have little or no effect on the occupational base of unskilled light work.  A finding of "not disabled" is therefore appropriate under the framework of this rule.

R. 26-27.  Thus, using the medical vocational grids as a framework, the ALJ determined that Claimant was not disabled because any additional limitations Claimant had would have little or no effect on the occupational base of unskilled light work.  R. 27.

The Appeals Council denied Claimant's request for review of the ALJ's decision.  R. 1-4.  On September 27, 2011, Claimant appealed the final decision of the Commissioner in the District Court.  Doc. No. 1.

## II.   LEGAL STANDARDS.

### A.   THE ALJ'S FIVE-STEP DISABILITY ANALYSIS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B.   STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991)).

When the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if it would have reached a contrary result as the finder of fact, or finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account both favorable and unfavorable evidence to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court must consider evidence detracting from evidence on which Commissioner relied). However, the District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## C.    REMEDIES.

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the District Court must either find that the Commissioner's decision applies the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991);

*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled)).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice. *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829-30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[2]

---

[2] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

III.   **ANALYSIS.**

**A.  The Grids.**

At step-four, once a claimant establishes that the combination of his or her impairments prevent the performance of past relevant work, the burden shifts to the Commissioner at step-five to show that the claimant is able to perform other work that exists in significant numbers in the national economy. *Cowart v. Schweiker*, 662 F.2d 731, 736 (11th Cir. 1981); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1989) (At step-five, "the burden shifts to the Secretary to prove that the claimant is capable, considering his age, education, and work experience [and RFC], of engaging in any other kind of substantial gainful work which exists in the national economy."). This case presents the issue of whether at step-five the ALJ appropriately relied on the medical vocational grids as a framework in determining that other significant work exists in the national economy that Claimant can perform without relying upon testimony from a VE.   In order to resolve the issue in this case, an explanation of how the grids may be used, either to direct a decision or as a framework for decision making, in various circumstances is appropriate.

In 1978, the Secretary of the Department of Health and Human Services promulgated the medical vocational guidelines, which may, in certain circumstances, allow an ALJ to determine at step-five whether a claimant may engage in other kinds of substantial gainful work existing in significant numbers in the national economy based upon the Claimant's age, education, work experience, and RFC without introducing testimony from a VE. *See Heckler v. Campbell*, 461 U.S. 458, 460-61 (1983) (discussing the promulgation of the regulations implementing the grids).[3]   As the United States Supreme Court stated in *Campbell*, 461 U.S. at 461-62:

---

[3] In *Campbell*, 461 U.S. at 461, the United States Supreme Court explained the following purpose for the creation of the grids:

> These guidelines relieve the Secretary of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy. They consist of a matrix of the four factors identified by Congress - physical ability, age, education, and work experience - and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled.

*Id.*   Thus, the purpose of the medical vocational grids is to provide the ALJ with substantial evidence upon which they may rely in an efficient manner to determine whether significant number of jobs exist that a claimant can perform based upon the claimant's age, education, work experience and RFC.  *Id.*[4]   When the grids are properly used, there is no need to introduce independent evidence of specific jobs that are available in significant numbers that the claimant can perform.  *Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir. 1985) (citing *Campbell*, 461 U.S. at 468-72).  This is so because the regulations provide that:

> [A]dministrative notice has been taken of the number of unskilled jobs that exist throughout the national economy at the various

---

Prior to 1978, the Secretary relied on vocational experts to establish the existence of suitable jobs in the national economy. After a claimant's limitations and abilities had been determined at a hearing, a vocational expert ordinarily would testify whether work existed that the claimant could perform. Although this testimony often was based on standardized guides, *see* 43 Fed.Reg. 9286 (1978), vocational experts frequently were criticized for their inconsistent treatment of similarly situated claimants. *See Santise v. Schweiker*, 676 F.2d 925, 930 (CA3 1982); J. Mashaw et al., *Social Security Hearings and Appeals* 78-79 (1978). To improve both the uniformity and efficiency of this determination, the Secretary promulgated medical-vocational guidelines as part of the 1978 regulations. See 20 CFR pt. 404, subpt. P, app. 2 (1982).

*Id.* The Court stated that approximately 2.3 million claims for disability were filed in 1981, requiring a quarter of a million hearings before ALJs. *Id.* at n. 2.  Thus, the Court stated that "the need for efficiency is self-evident." *Id.*

[4] The terms "grids," "guidelines," and "rules" are used synonymously throughout this order when referring to the medical vocational grids.

> functional levels (sedentary, light, medium, heavy, and very heavy) as supported by the [DOT] and the "Occupational Outlook Handbook," published by the Department of Labor; the "County Business Patterns" and "Census Surveys" published by the Bureau of the Census; and occupational surveys of light and sedentary jobs prepared by the Social Security Administration by various State employment agencies.

20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(b) (emphasis added).  *See also* 20 CFR § 404.1566(d) (explaining that administrative notice will be taken of the number of unskilled sedentary, light, and medium jobs that exist in the national economy).  In *Campbell*, 461 U.S. at 468, the United States Supreme Court upheld the validity and use of the medical vocational grids.  *Id.*[5]

Nevertheless, use of the medical vocational grids to direct a decision or to be used as a framework for decision making, standing alone, is not always appropriate.  *See* 20 CFR 404.1569 ("The [medical vocational grids] do not cover all possible variations of factors," and the Commissioner does not "apply these [grids] if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a [grid]").  *See also Campbell*, 461 U.S. at 462 n. 5 ("[T]he regulations provide that the [grids] will be applied only when they describe a claimant's abilities and limitations accurately.") (emphasis added).

Initially, the ALJ makes factual findings as to the claimant's exertional RFC, age, education, and work experience.  20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(a); 20 CFR § 404.1569a(a).  Exertional limitations include only the strength demands of work – sitting, standing, walking, lifting, carrying, pushing, and pulling.  20 CFR § 404.1569a(b).  The Dictionary of Occupational Titles (the "DOT") classifies jobs that exist in the national economy by their exertional and skill requirements.  20 CFR § 404.1569.  With respect to the exertional

---

[5] The medical vocational grids may be found at 20 CFR Part 404, Subpart P, Appendix 2.

requirements of work, the Commissioner has adopted the classifications, and their respective meanings, of the DOT's classifications – sedentary, light, medium, heavy, and very heavy.  20 CFR 404.1567(a)-(e) (explaining the adoption of the DOT's classifications and defining the terms).  Thus, at step-five, the ALJ initially makes factual findings only as to the claimant's exertional RFC (sedentary, light, medium, heavy, or very heavy), age, education, and work experience.  *See Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985) (initially only exertional limitations are considered).[6]

For claimants found capable of a full range of the exertional requirements of sedentary, light, or medium work, the grids provide corresponding tables for each of those classifications and account for the additional factors of age, education, and work experience.  *See* 20 CFR Pt. 404, Subpt. P, App. 2.  It is only where the claimant's exertional RFC and additional factors correspond exactly with all the particular criteria of a given rule that the grids direct a result.  *See* 20 CFR Pt. 404, Subpt. P, App. 2 § 200.00.[7]  If the grids direct a result, they are not used as a framework, but "leave no discretion to the ALJ, for they direct the ultimate conclusion of whether a claimant is capable of other substantial gainful work in the national economy." *Broz v. Schweiker*, 677 F.2d 1351, 1356 (11th Cir. 1982), *adhered to sub nom. Broz v. Heckler*, 711 F.2d 957 (11th Cir. 1983).  Thus, if a claimant has only exertional limitations – limitations in the ability to sit, stand, walk, lift, carry, push, and pull – and if those exertional limitations correspond exactly to the definitions of sedentary, light, medium, heavy, or very heavy work, after applying the additional factors for age, education, and work experience the medical

---

[6] Non-exertional limitations, if they exist, come into play later in the analysis.

[7] For example, Rule 201.01 directs that if an individual is capable of the full range of sedentary work, is of advanced age, with a limited education, and has only unskilled work experience, then the individual is disabled.  *See* 20 CFR Pt. 404, Subpt. P, App. 2 § 201.01.

vocational grids will direct a decision as to whether the claimant is disabled or not.  *See* 20 CFR § 404.1569a(b); 20 CFR § 404.1567(a)-(e); 20 CFR Pt. 404, Subpt. P, App. 2 § 200.00. *See also Gibson v. Heckler*, 762 F.2d 1516, 1521 (11th Cir. 1985) (holding grids did not "direct" result of not disabled where the ALJ found that the claimant could only perform "some sedentary work").[8]

Nonexertional limitations affect a claimant's ability to meet the demands of work unrelated to the strength demands of that work.  20 CFR § 404.1569a(c)(1).  Examples of non-exertional impairments include limitations in the ability to: manage pain, bend, stoop, crouch, climb, crawl, understand or remember instructions, maintain attention, concentration or pace, see, speak or hear, tolerate environmental conditions in the workplace, and socially function in the workplace.  20 CFR § 404.1569a(c)(1).

If a claimant has both exertional and nonexertional limitations, the regulations state the following:

> [W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in these

---

[8] The Eleventh Circuit has repeatedly stated that "[e]xclusive reliance upon the grids is not appropriate . . . when the claimant is unable to perform a full range of work at a given residual functional level. . . ."  *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985); *Walker v. Bowen*, 826 F.2d 966, 1002-03 (11th Cir. 1985) (quoting *Francis*); *Welch v. Bowen*, 854 F.2d 436, 439 (11th Cir. 1988) (quoting *Walker*); *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) (quoting *Walker*); *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995) (quoting *Walker*); *Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996) ("The ALJ should not rely exclusively on the grids when the claimant . . . cannot perform the full range of employment at the appropriate level of exertion."); *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004) (quoting *Francis*).

> combinations of nonexertional and exertional limitations which
> cannot be wholly determined under the rules in this appendix 2,
> full consideration must be given to all of the relevant facts in the
> case in accordance with the definitions and discussions of each
> factor in the appropriate sections of the regulations, which will
> provide insight into the adjudicative weight to be accorded each
> factor.

20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(e)(2) (emphasis added).  Thus, if a claimant has both

exertional and nonexertional impairments, and the exertional limitations alone do not direct a

finding of disability, the grids are used only as a framework for decision making.  *Id*.  *See also*

20 CFR § 404.1569a(d) (if claimant has both exertional and nonexertional limitations "we will

not directly apply the [grids, but] the rules provide a framework to guide our decision.").

With respect to what the regulations mean by a "framework for decision making," Social

Security Rule 83-14, provides:

> Where a person cannot be found disabled on strength limitations
> alone, the rule(s) which corresponds to the person's vocational
> profile and maximum sustained work capability . . . will be the
> starting point to evaluate what the person can still do functionally.
> The rules will also be used to determine how the totality of
> limitations or restrictions reduces the occupational base of
> administratively noticed unskilled sedentary, light, or medium
> jobs.  A particular additional exertional or nonexertional limitation
> may have very little effect on the range of work remaining that an
> individual can perform.  The person, therefore, comes very close to
> meeting a table ruling which directs a conclusion of "Not
> disabled."  On the other hand, an additional exertional or
> nonexertional limitation may substantially reduce a range of work
> to the extent that an individual is very close to meeting a table rule
> which directs a conclusion of "Disabled."  Use of a vocational
> resource may be helpful in the evaluation of what appears to be
> "obvious" types of cases.  In more complex situations, the
> assistance of a vocational resource may be necessary. . . .
> Vocational experts may testify for this purpose. . . . Where it is
> clear that the additional limitation or restriction has very little
> effect on the exertional occupational base, the conclusion directed
> by the appropriate rule . . . would not be affected.

SSR 83-14, 1983 WL 31254 at *3-4 (emphasis added).   Thus, although use of a vocational

resource or vocational expert may be "helpful" in some cases and "necessary" in other more

complex but unspecified types of cases, where it is clear that the additional limitations have little

effect on the occupational base of work at a given exertional level, the ALJ may apply the same

conclusion as would be directed by the grids as if the claimant's RFC, age, education, and work

experience coincided exactly with the particular grid. *Id.*

In *Sryock v. Heckler*, 764 F.2d 834, 835-36 (11th Cir. 1985), the ALJ found that the

claimant retained the RFC for light work with additional nonexertional limitations of no work

involving a heavily polluted environment.   *Id.*   The claimant argued that the ALJ erred by relying

upon the grids.   *Id.*   The Eleventh Circuit held:

> [W]hen both exertional and nonexertional work impairments exist
> the grids may still be applicable.   <u>Non-exertional limitations can
> cause the grids to be inapplicable only when the limitations are
> severe enough to prevent a wide range of gainful employment at
> the designated [exertional] level</u>.   Therefore, <u>when both exertional
> and nonexertional limitations affect a claimant's ability to work,
> the ALJ should make a specific finding as to whether the
> nonexertional limitations are severe enough to preclude a wide
> range of employment at the given work capacity level indicated by
> the exertional limitations</u>.   Courts will review this determination
> only to determine whether it is supported by substantial evidence.

*Id.* at 836 (emphasis added) (internal quotations omitted).   Thus, in *Sryock*, the Eleventh Circuit

held that the grids are only inapplicable when the nonexertional limitations are severe enough to

prevent a wide range of gainful employment at a designated exertional level, and, in such cases,

the ALJ must make a specific factual finding on that point.   *Id.*

In *Sryock*, the Court remanded the case to the Commissioner, stating:

> In the present case, the ALJ appears to have found, in vague terms,

-13-

the existence of a nonexertional limitation. As stated by the ALJ, appellant is physically able to perform light work but, due to breathing problems accompanying his disease, he cannot do this work in a "heavily polluted environment." We find no problem with the evidence upon which the ALJ's findings were made. However, the ALJ made no findings as to whether this nonexertional, environmental limitation was severe enough to prevent appellant from performing a wide range of light work which exists in the national economy.

It is not clear from the record what sort of pollution or other impurities in the work environment would make it impossible for this claimant to perform light work. Depending upon the extent of this nonexertional impairment, it may be that the grids should not have been used. If this environmental limitation merely limits appellant from working in environments that exist only rarely in the work place, so that available light work is not significantly restricted by this limitation, then the use of the grids, which compelled a finding of no disability, is legitimate. If the ALJ is referring to an environmental limitation which is relatively prevalent in the work place and thus significantly limits work opportunities, then the finding of this limitation makes it improper to use the grids, and proof of the availability of suitable work in the national economy would have to be demonstrated by other evidence, perhaps through a vocational expert familiar with the availability of such work.

We are unable to discern from the record whether appellant's environmental limitations are severe enough to prevent him from performing a wide range of light work. We thus remand to the district court, with instructions to remand to the Secretary, for further findings as to the extent of the environmental limitation and, if necessary, the taking of further evidence as to the existence of work which appellant is capable of performing in the national economy.

*Id.* at 837 (emphasis added).   Therefore, in *Sryock*, the Eleventh Circuit held that unless the

nonexertional limitations "are severe enough to preclude a wide range of employment at the

given work capacity level" an ALJ may utilize the grids without receiving testimony from a VE,

but the ALJ must make a specific factual finding to that effect and it must be supported by

substantial evidence.  *Id*.  *Accord Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1992); *Walker v. Bown*, 826 F.2d 996, 1003 (11th Cir. 1987) ("When both exertional and non-exertional impairments affect a claimant's ability to work, the ALJ is supposed to make a specific finding as to whether they preclude a wide range of employment.").

The Eleventh Circuit also later stated that "[a]n ALJ's conclusion that a claimant's limitations do not significantly compromise his basic work skills or are not severe enough to preclude him from performing a wide range of light work is not supported by substantial evidence unless there is testimony from a vocational expert." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).  Similarly, in *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002), the Eleventh Circuit broadly stated that "[i]f nonexertional impairments exist, the ALJ may use Medical-Vocational Guidelines as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform." *Id*.

More recently, in *Phillips v. Barnhart*, 357 F.3d 1232, 1242-43 (11th Cir. 2004), the Eleventh Circuit clarified that:

> If the ALJ concludes that Phillips cannot perform a full range or unlimited types of work at the sedentary level given her exertional limitations, then the ALJ must consult a vocational expert to determine whether there are sufficient jobs at the sedentary work level within the national economy that Phillips can perform. If, however, the ALJ concludes that Phillips can perform a full range or unlimited types of work at the sedentary level despite any exertional limitations, the ALJ next must determine to what extent Phillips's nonexertional limitations affect her ability to secure employment at the sedentary work level in the national economy.

*Id*. (emphasis added). Therefore, an ALJ must first determine whether a claimant is capable of performing unlimited types of work or a full range of work at a given exertional level based

solely on the claimant's exertional limitations.  *Id*.  If a claimant's exertional limitations are such that he cannot perform a full range of work at the given exertional level, the ALJ must consult a VE.  If a claimant's exertional limitations permit a full range of work at a given functional level, then the ALJ must analyze whether the nonexertional impairments further limits the claimant's ability to work at that exertional functional level.  *Id*.

With respect to the ALJ's consideration of the nonexertional impairments, the Eleventh Circuit then held:

> When considering Phillips's nonexertional limitations, the ALJ need only determine whether Phillips's nonexertional impairments significantly limit her basic work skills.  This Court has interpreted "significantly limit basic work skills" as limitations that prohibit a claimant from performing "a wide range" of work at a given work level. *See Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir.1995) (The ALJ must determine "whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level." (emphasis added) (internal quotation marks and citations omitted)).
>
> If the ALJ determines that Phillips's nonexertional limitations do not significantly limit her basic work skills at the sedentary work level, then the ALJ may rely on the grids to determine if Phillips is disabled.  If, however, the ALJ determines that Phillips's nonexertional limitations significantly limit her basic work skills at the sedentary work level, then the ALJ must consult a vocational expert.

*Id*. at 1243 (emphasis added).    Thus, consistent with the Eleventh Circuit's earlier holding in *Sryock*, the Court held that if the nonexertional limitations do not significantly limit a claimant's ability to perform a wide range of work at a given exertional level, then the ALJ may rely upon the grids as a framework to determine whether the claimant is disabled.  *Id*.  If the ALJ determines that the nonexertional limitations prevent a wide range of work at the exertional

level, the ALJ may not rely upon the grids as a framework and must consult a VE. *Id*.[9]

**B. Application.**

Claimant argues that the ALJ erred at step-five because the finding that Claimant's "additional limitations have little or no effect on the occupational base of unskilled light work" is not supported by substantial evidence. Doc. No. 25 at 13 (quoting R. 27). The Commissioner maintains that the ALJ properly relied solely upon the medical vocational grids at step-five. Doc. No. 27 at 5-7.[10]

In this case, the ALJ determined that the Claimant has the RFC for light work with additional limitations, including simple, routine and repetitive tasks. R. 22. At step-four, the ALJ determined that based upon Claimant's RFC, she is unable to perform his past relevant work, and then the ALJ proceeded to step-five of the sequential evaluation process. R. 26. At step-five, based upon the Claimant's age, education, work experience, and RFC, the ALJ utilized the medical vocational grids as a framework for decision making to determine that a significant number of jobs exist in the national economy which Claimant can perform and, therefore, Claimant is not disabled. R. 26-27.[11]

At step-five, after determining that Claimant is exertionally capable of the full range of light work, the ALJ determined that Claimant's additional nonexertional limitations "have little

___

[9] In *Phillips*, the Eleventh Circuit admitted that some of its decisions may be interpreted as "blurring the line between exertional limitations and nonexertional limitations, on the one hand, and a full range or unlimited types of work and wide range or significantly limiting basic work skills on the other." *Id*. at 1243 n. 3.

[10] Although the Commissioner acknowledges that the ALJ did not rely upon the testimony of the VE at step-five, the Commissioner maintains that the VE's testimony supports the ALJ's ultimate findings. Doc. No. 27 at 6-7. However, the Eleventh Circuit has recently stated that "a court may not accept appellate counsel's *post hoc* rationalizations for agency actions," and "[i]f an action is to be upheld, it must be upheld on the same bases articulated in the agency's order." *Baker v. Commissioner of Social Security*, 2010 WL 2511385 at *3 (11th Cir. June 23, 2010) (citing *FPC v. Texaco Inc.*, 417 U.S. 380, 397 (1974) (emphasis in original)).

[11] The ALJ did not find that the medical vocational grids directed a decision, but rather used them as a framework for decision making. *See* R. 26-27.

or no effect on the occupational base of unskilled light work." R. 27. Thus, the ALJ complied with *Sryock* and *Phillips*, and the only remaining issue is whether that finding is supported by substantial evidence.

With respect to Claimant's limitations to simple, routine, and repetitive work, the ALJ stated that the Claimant is capable of unskilled work. R. 27.[12] The regulations define "unskilled work" as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 CFR § 404.1568. The regulations further state administrative notice has been taken based of the number of unskilled light jobs that exist in the national economy in significant numbers. 20 CFR § 404.1566(d). The medical vocational grids also state that they account for the number of unskilled light work that exists in the national economy. 20 CFR Pt. 404, Subpt. P., App. 2 § 202.00(a)-(b). In *Vuxta v. Commissioner of Social Security*, 194 Fed.Appx. 874, 878 (11th Cir. 2006) (unpublished), the Eleventh Circuit recognized that "a limitation to simple tasks is already contained within the unskilled limitation, and is not a limitation above and beyond that classification." *Id*.[13] Therefore, the grids account for limitations to simple tasks by providing administrative notice of the number of unskilled light work positions that exist in the national economy. *Id*. Accordingly, substantial evidence supports that ALJ's finding with respect to simple tasks.

As to the ALJ's limitation to routine tasks, the Eleventh Circuit's decision in *Vuxta*, 194 Fed.Appx. at 878, is once again instructive. In *Vuxta*, the ALJ determined that the claimant

---

[12] In determining the Claimant's RFC, the ALJ did not specifically limit the Claimant to unskilled work. *See* R. 22.

[13] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* Eleventh Cir. R. 36-2.

retained the RFC for unskilled light work with additional nonexertional limitations to "simple repetitive tasks." *Id*.   After finding that the limitation to simple tasks is contained within unskilled work, the Eleventh Circuit stated that "a limitation to repetitive tasks, however, is not contained with the definition of unskilled." *Id*.   Therefore, the case was remanded for the ALJ to specifically address the claimant's limitations to repetitive tasks.  *Id*.

Similarly, in *Coffin v. Commissioner of Social Security*, Case No. 6:09-cv-2061-Orl-DAB, 2011 WL 806674 at *8 (M.D. Fla. Mar. 2, 2011), the ALJ determined that the claimant was limited to "simple, routine, repetitive tasks." *Id*.   Magistrate Judge David A. Baker determined that limitations to routine and repetitive tasks "are not within the definition of unskilled" and, therefore, remand was required for the ALJ to provide "some explanation or analysis" as to whether those limitations would preclude a wide range of work at the light level and, if necessary, obtain VE testimony.  *Id*.

In this case, at step-five, the ALJ did not specifically address Claimant's limitation to routine or repetitive tasks or cite to any regulation or rule, which includes such a limitation in the definition of unskilled work.  R. 27.  While other district courts within the Eleventh Circuit and at least one other Circuit Court of Appeals have found that limitations to simple, routine, and repetitive tasks are all included within or are consistent with the definition of unskilled work, the undersigned is persuaded by the reasoning of *Vuxta* and *Coffin*, and finds that the ALJ should have provided an explanation or analysis concerning Claimant's limitation to routine and repetitive tasks.[14]  Accordingly, the Court finds that the ALJ's determination that the "additional

---

[14] *See Allison v. Apfel*, 2000 WL 1276950 at *4 (6th Cir. 2000) (unpublished) (ALJ's limitation to simple, routine, repetitive tasks means unskilled light work); *Narlock v. Commissioner of Social Security*, Case No. 6:07-cv-524-Orl-31KRS, 2008 WL 3364690 at *7 (M.D. Fla. Aug. 8, 2008) (reversing on other grounds, but finding that limitations to simple, routine instructions are sufficiently accounted for by unskilled work); *Anderson v. Astrue*, 2011 WL

limitations have little or no effect on the occupational base of unskilled light work" is not supported by substantial evidence in the decision because the ALJ failed to provide any explanation or analysis regarding Claimant's limitation to routine and repetitive tasks.

### C. Remedy.

Claimant argues that based upon this record, the Court should find that additional limitations exist and remand the case for an award of benefits.  Doc. No. 25 at 15-17, 25.  However, the Court is not permitted to decide the facts anew or reweigh the evidence.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Moreover, based upon this record, the Court does not find that Claimant is disabled beyond a doubt. *See Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the appropriate remedy is a remand for further proceedings.[15]

## IV.   <u>CONCLUSION</u>.

For the reasons stated above, it is **ORDERED** that:

1.  The final decision of the Commissioner is **REVERSED and REMANDED**, pursuant to sentence four of Section 405(g) for further proceedings; and

2.  The Clerk is directed to enter judgment in favor of the Claimant and close the case.

---

3843683 at *3 (S.D. Ala. Aug. 30, 2011) (limitations to simple and routine tasks are consistent with the regulatory definition of unskilled work).

[15] Because a remand is required based upon the ALJ's error at step-five, there is no need to address the other issues raised by Claimant.  Nevertheless, the Court notes that the ALJ gave "greater weight" to the opinion of Dr. Barber, who opined that Claimant cannot stand and walk for long periods of time and requires a cane for ambulating long distances, but did not adopt any of those limitations in the RFC or provide any explanation or analysis with respect to those limitations, which appear to be more restrictive than the limitations contained in the ALJ's RFC. *See* R. 560. An ALJ is required to state with particularity the weight given to medical opinions and the reasons therefor.  *See Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011).  On remand, the ALJ should state with particularity the weight given to each medical opinion in the record and clearly articulate the reasons therefor.

**DONE and ORDERED** in Orlando, Florida on February 20, 2013.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests the Clerk
Mail or Deliver Copies of this Order to:

Paul J. Morgan, Esq.
Morgan, White-Davis & Martinez, P.A.
1099 W Morse Bld
Winter Park, FL 32789

John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida  33602
Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Brendan Flanagan
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc.
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224